NO. 26-1581

IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

ARBUTUS BIOPHARMA CORPORATION, GENEVANT SCIENCES GMBH,

*Plaintiffs-Appellees*,

v.

MODERNA, INC., MODERNATX, INC.,

*Defendants-Appellants*.

On Appeal from the United States District Court
For the District of Delaware,
The Honorable Joshua D. Wolson, Case No. 1:22-cv-000252-JWD

**AMICUS CURIAE BRIEF OF THE TEXAS CONSERVATIVE
COALITION RESEARCH INSTITUTE IN SUPPORT OF
DEFENDANTS-APPELLANTS AND REVERSAL OF THE
DISTRICT COURT**

Russell H. Withers
Texas Conservative Coalition
Research Institute
919 Congress, Suite 400
Austin, TX 78701
Telephone: (512) 474-6042
Email: Russell@TXCCRI.org
*Attorney for Amicus Curiae Texas
Conservative Coalition Research
Institute*

i

# CERTIFICATE OF INTEREST

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

**Case Number** 26-1581

**Short Case Caption** Arbutus Biopharma Corporation v. Moderna, Inc.

**Filing Party/Entity** Texas Conservative Coalition Research Institute

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/05/2026

Signature: /s/ Russell H. Withers

Name: Russell H. Withers

ii

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Texas Conservative Coalition Research Institute | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

iii

FORM 9. Certificate of Interest

Form 9 (p. 3)
March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Russell H. Withers | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☐ No ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

iv

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................................. ii

TABLE OF CONTENTS.................................................................................... v

TABLE OF AUTHORITIES ............................................................................ vi

INTEREST OF THE AMICUS CURIAE ........................................................... 1

STATEMENT REGARDING AUTHORSHIP AND MONETARY
    CONTRIBUTIONS ..................................................................................... 3

SUMMARY OF THE ARGUMENT .................................................................... 4

ARGUMENT .................................................................................................... 7

   I.  Background and Issues Presented ................................................ 7

  II.  A host of considerations support the proposition that Moderna's vaccine was produced "for the United States," which invokes Section 1498(a)'s protections. ...................................................................................... 9

      A.  A plain reading of Section 1498(a) should lead to a different outcome than the one reached by the district court. ..............................................10

      B.  A logical analysis of "by or for the United States" leads to a different outcome than the outcome reached by the district court. ........................12

      C.  A host of existing doctrines and caselaw support the proposition that the intended beneficiary of a benefit is rarely the final recipient. ..................13

CONCLUSION ...............................................................................................18

CERTIFICATE OF COMPLIANCE .................................................................20

CERTIFICATE OF SERVICE.........................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Bauer & Cie. v. O'Donnell*, 229 U.S. 1 (1913) ....................................15

*Bobbs-Merrill Co. v Straus*, 210 U.S. 339 (1908) ...............................15

*Carson v. Makin*, 596 U.S. 767 (2022)...............................................17

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)............................10

*Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464 (2020).............17

*Impression Products, Inc. v. Lexmark International, Inc.*, 581 U.S. 360 (2017)....16

*Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013) ................15

*Madey v. Duke Univ.*, 307 F.3d 1351 (Fed. Cir. 2002) .......................... 8

*Mueller v. Allen*, 463 U.S. 388 (1983)................................................17

*Quality King Distributors, Inc. v. L'anza Research International, Inc.*, 523 U.S. 135 (1998) .........................................................................................15

*Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008) ...................16

*Sevenson Envt'l Servs., Inc. v. Shaw Envt'l, Inc.*, 477 F.3d 1361 (Fed. Cir. 2007) 10

*Smith v. United States*, 508 U.S. 223 (1993) ........................................11

*Straus v. Victor Talking Machine Co.*, 243 U.S. 490 (1917)................15

*United States v. Univis Lens Co.*, 316 U.S. 241 (1942) ........................16

*Witters v Washington Dep't of Servs. for the Blind*, 474 U.S. 481 (1986) ............17

*Zelman v. Simmons-Harris*, 536 US 639 (2002)...............................16, 17

*Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1 (1993) ................18

**Statutes**

28 U.S.C. § 1498(a) .....................................................................passim

42 U.S.C. § 247(d) ................................................................................ 7

**Other Authorities**

Restatement (Second) of Contracts § 1 (Am. L. Inst. 1981) ................. 2

U.S. Dep't of Health & Hum. Servs., *Fact Sheet: Explaining Operation Warp Speed* (Dec. 2020)..............................................................................8, 9

**Rules**

Fed. R. App. P. 29(a)(2)............................................................................... 3

Fed. R. App. P. 29(a)(5)...............................................................................20

Fed. R. App. P. 32(a)(5)...............................................................................20

Fed. R. App. P. 32(a)(6)...............................................................................20

Fed. R. App. P. 32(f).....................................................................................20

## INTEREST OF THE AMICUS CURIAE

The Texas Conservative Coalition Research Institute (TCCRI) is a 501(c)(3) public policy think-tank, based in Austin, Texas. It was founded in 1995 by conservative leaders determined to implement conservative public policies in state government. TCCRI has distinguished itself as a leading state-based think-tank and has been successful in living up to its mission of shaping public policy through a principled approach to government. Its research reports, Task Forces, and policy summits have been instrumental in generating proposals that are shaping Texas government and influencing a new generation of conservative leadership.

TCCRI is guided by the principles of Limited Government, Individual Liberty, Free Enterprise, and Traditional Values, which, taken together, form TCCRI's "LIFT Principles."

TCCRI's interest in the outcome of this case is grounded in public policy. Government policy should be clear, unambiguous, and predictable, yet the approach taken by the district court has effectively created a government policy lacking those qualities.

The question in this case is one of statutory construction, and the district court created an issue where none existed by misreading 28 U.S.C. § 1498(a). It did so in a manner that is likely to create uncertainty among private contractors otherwise willing to enter contracts with the federal government. If the decision stands, it

1

creates a significant impediment to the important work that the private sector conducts for the federal government.

Any party to any contract must have confidence that the terms of that contract are deliverable by the other party, and if they are not, that courts will enforce them or make them whole in the event of a breach. Indeed, "A contract is a promise or a set of promises for the breach of which the law gives a remedy." Restatement (Second) of Contracts § 1 (Am. L. Inst. 1981). This principle applies, arguably with even greater import, when a party to the contract is the federal government. Indeed, if the federal government seeks a contractor to work on its behalf and in the process risk its time, personnel, and financial resources, the party should be confident that the protections offered in that contract are reliable and will not be upended by courts using a novel statutory interpretation.

Can a government contractor rely upon the protections put forth in a contract with the government when those protections are based on a plain and commonly held understanding of a short turn of phrase? Though this question of statutory construction may seem like a small question, the answer has large implications for a host of public policy issues ranging from larger macroeconomic impact all the way down to individual choices in the marketplace. If the district court's decision below stands, the answer to the above question with respect to contracts invoking 28 U.S.C §1498's protections is an emphatic *no*.

And with an emphatic *no*, government must do more itself. Losing the ability to contract with private sector businesses leads to more government, which cuts directly against TCCRI's "limited government" prong of its LIFT principles. It would also hinder offerings of the private sector in the process, which invokes the "free enterprise" prong of the LIFT principles.

The Court of Appeals for the Federal Circuit has an opportunity to address this important policy issue by applying the law and reversing the district court's decision. Therefore, as a public policy organization, TCCRI has an ongoing interest in this case and its final resolution.

Pursuant to Fed. R. App. P. 29(a)(2), this brief was filed with the consent of all parties.

## STATEMENT REGARDING AUTHORSHIP AND MONETARY CONTRIBUTIONS

No party's counsel authored this Brief in whole or in part. No party or party's counsel contributed money intended to fund preparing or submitting the Brief, and no person other than Amicus Curiae, its members, or its counsel contributed money that was intended to fund the preparing or submitting the Brief.

/s/ Russell H. Withers
Russell H. Withers
Attorney of record for *Amicus Curiae*
Texas Conservative Coalition
Research Institute

3

## SUMMARY OF THE ARGUMENT

In the year 2020, as the nation faced a COVID-19 pandemic, the federal government under the Trump Administration launched Operation Warp Speed, the intent of which was to produce hundreds of millions of vaccine doses by 2021 so that the American people could be protected from infection and transmission of the virus ravaging the nation and the world. The government turned to the private sector for ingenuity and expertise in developing and manufacturing these vaccines. This is something the government could not have done alone, so it sought a partnership with private entities that could help make the desire to move past the pandemic a reality.

Moderna played a key role in Operation Warp Speed. In partnership with the federal government, and under contract, Moderna produced hundreds of millions of doses of its COVID-19 vaccine. It did so with the understanding that the protections made available to it through clauses in its contract invoking the protections of 28 U.S.C. § 1498 would be applicable and enforceable.

The intent of Section 1498(a), in part, is to protect contractors and subcontractors who produce goods "for the United States" and in the process, use technology covered by another patent. In such an event, the patent holder's remedy is a suit against the federal government in the Court of Federal Claims for reasonable and entire compensation.

The district court in this case determined that because the federal government distributed the vaccines it purchased under contract from Moderna to members of the American public, the vaccines were not produced "for the United States." Appx32.

The basic question before this Court is one of statutory construction. What does "for the United States" mean?

The Texas Conservative Coalition Research Institute (TCCRI) argues that the most basic interpretation of this phrase is clear: When the government contracts for a good, purchases the good, and takes possession of the good, that good was produced "for" the government (i.e. "for the United States"), regardless of what the government subsequently does with said good.

Basic statutory construction supports this position. The context and history surrounding the statute support this position. And a host of analogous cases and doctrines support this position. Taken together, the arguments presented in this amicus brief make clear that the party—in this case, the United States government—that contracts for a good, pays for a good, and takes possession and control of a good, is the party that said good was produced "for," and, thus, the party that produced that good—in this case, Moderna—should have the benefit of the protections afforded to it under 28 U.S.C. §1498.

TCCRI argues, for these reasons, that the United States Court of Appeals for the Federal Circuit should reverse the district court's ruling.

# ARGUMENT

## I.     Background and Issues Presented

The facts of this case are simple. In response to the Covid-19 pandemic, the federal government declared a public health emergency under 42 U.S.C. § 247(d) and approximately four months later launched Operation Warp Speed, with the goal of producing and delivering "300 million doses of safe and effective vaccines with the initial doses available by January 2021, as part of a broader strategy to accelerate the development, manufacturing, and distribution of COVID-19 vaccines, therapeutics, and diagnostics (collectively known as countermeasures)." U.S. Dep't of Health & Hum. Servs., *Fact Sheet: Explaining Operation Warp Speed* (Dec. 2020), https://web.archive.org/web/20201219231756/https://www.hhs.gov/coronavirus/explaining-operation-warp-speed/index.html. Operation Warp Speed would accomplish its goals through a partnership between "the Department of Health and Human Services (HHS), including the Centers for Disease Control and Prevention (CDC), the National Institutes of Health (NIH), and the Biomedical Advanced Research and Development Authority (BARDA), and the Department of Defense (DoD)." *Id.* These agencies would partner with private companies to help produce one or more COVID-19 vaccines. *Id.* Moderna is one of those private companies, and the Department of Health and Human Services (HHS) announced a partnership

7

with Moderna on August 11, 2020. *Id.* On December 11, 2020, HHS announced an expansion of the partnership with Moderna, obligating Moderna to produce hundreds of millions of doses of its mRNA vaccine for the federal government of the United States of America. *Id.*

The government's contracts with Moderna provided express "authorization and consent" to use existing patents held by other parties in the process of producing its vaccine for the federal government. This was done by inserting Federal Acquisition Regulation (FAR) clauses in the contracts. These clauses directly reference 28 U.S.C. § 1498(a), which provides, in part:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without a license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .

28 U.S.C. § 1498(a) (emphasis added).

Section 1498 is a policy, adopted by Congress and modified several times, that "relieves a third party from patent infringement liability, and acts as a waiver of sovereign immunity and consent to liability" by the federal government of the United States of America. *Madey v. Duke Univ.*, 307 F.3d 1351, 1359 (Fed. Cir. 2002). Section 1498 has a rich history, the effect of which was ultimately to expand to so that coverage of contractors and subcontractors is now clear and unequivocal. *See*

8

Appellant's Opening Br. at 35-36, *Arbutus Biopharma Corp. v. Moderna, Inc.*, No. 26-1581 (Fed. Cir. filed May 29, 2026).

Moderna relied upon Section 1498 and the federal government's express application of it through the FAR clauses in its contract when it produced its vaccine as a part of Operation Warp Speed. Moderna, and companies similarly situated, rely upon the terms of their contracts, particularly with billions of potential dollars at stake. Contract terms are heavily negotiated, and a lack of certainty that a key provision will be enforced would create a significant deterrent for any private company considering a procurement with the federal government.

The district court undermined these protections by applying a novel and incorrect reading of section 1498. In the process, it upended the reliance placed upon those protections by government contractors, including Moderna, but more broadly by any potential contractor considering a procurement contract with the federal government under which Section 1498 and related FAR clauses would otherwise apply.

## II.   A host of considerations support the proposition that Moderna's vaccine was produced "for the United States," which invokes Section 1498(a)'s protections.

Under Section 1498(a), protection applies when a patented invention "is used or manufactured by or *for* the United States." 28 U.S.C. § 1498(a) (emphasis added). A defendant being sued for patent infringement can assert Section 1498(a) as an

9

affirmative defense. In doing so, the defendant must show that (1) the infringing use was "for the government" and (2) that the act of infringement was made "with the authorization and consent of the Government." *Sevenson Envt'l Servs., Inc. v. Shaw Envt'l, Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007). The district court determined that prong (2) was satisfied, but that Moderna's manufacture of its vaccine did not satisfy prong (1) because the vaccine was not manufactured *for the government*. Appx17, Appx32. "Through traditional tools of statutory construction," the district court determined that "the facts are not in dispute" on that question, and, thus, Section 1498's protections do not apply to Moderna with respect to the vast majority of vaccine doses it manufactured and supplied for the United States government. Appx32. Respectfully, TCCRI would agree that the facts are not in dispute, but the facts favor the position of the Defendant-Appellants.

A.    **A plain reading of Section 1498(a) should lead to a different outcome than the one reached by the district court.**

The district court properly began its analysis of what "for the Government" under Section 1498(a) means by looking at the text and proceeding "from the understanding that, unless otherwise defined, [statutory terms are interpreted] in accordance with their ordinary meaning." Appx13. Indeed, "[w]hen the words of a statute are unambiguous, then, this first cannon is also the last: the judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

10

The problem, however, is that the district court did *not* interpret the text according to its ordinary meaning, yet acted as though it did so and viewed its judicial inquiry as complete nonetheless.

As the Defendants-Appellants' brief points out, in the process of defining "for" in the statutory phrase "for the Government," the district court picked one definition among 31 definitions in the same dictionary to serve its purpose. *See* Appellant's Opening Br. At 35-36. But one need not consult 31 definitions to reach the conclusion that a government procurement for a good or service that the government ultimately passes on to others is still a procurement *for the government*.

Indeed, "[t]he meaning of words cannot be determined in isolation, but must be drawn from the context in which they are used." *Smith v. United States*, 508 U.S. 223, 241 (1993) (Scalia, J., dissenting). Here, the context is a statute, 28 U.S.C. § 1498(a), for which a rich history provides a context supportive of the Defendant-Appellants' position. *See* Appellants' Opening Br. at 30-35. It is clear from the history behind Section 1498 that its plain meaning—goods procured by the government are, indeed, *for the government*—is entirely in line with the context surrounding it. This is not a case in which the history tells a different story than the text in the statute; rather, the history buttresses the plain meaning of the statutory text. This Court has basis enough reverse the district court's decision on this point alone.

11

**B.**    **A logical analysis of "by or for the United States" leads to a different outcome than the outcome reached by the district court.**

Related to the argument around the plain meaning of "by or for the United States" is a logical argument. By way of example, suppose that the federal government had directly hired the entire staff of a widget company to manufacture widgets internally for the federal government. In the event that the widgets infringe upon another party's patent, Section 1498(a) would apply in that case because the widgets were manufactured "by . . . the United States." It would not matter what or *who* the widgets were for. There is no requirement in this scenario that the widgets be used by federal government employees rather than distributed to the general public. Section 1498(a) would clearly apply in either scenario.[1]

It does not follow, then, that widgets produced "for the United States" by a contractor at the direct request and through a contract with the federal government would be so limited. Indeed, requiring that the widgets manufactured "for" the United States be used exclusively by government employees would give Section 1498(a)'s treatment of "for" the United States an entirely different meaning than "by" the United States, all within the same statutory breath and context. Such a

[1] It is worth noting that in this scenario, the federal government remains the responsible party, subject to legal action for patent infringement. Section 1498's main effect in this scenario is venue, which would be the United States Court of Federal Claims. 28 U.S.C. § 1498(a). It would also mean a determination of liability by a Court of Federal Claims judge, and it would specify that the appropriate remedy is reasonable and complete compensation. *Id.*

12

reading would violate the laws of logic and gives this Court grounds enough for reversal.

### C. A host of existing doctrines and caselaw support the proposition that the intended beneficiary of a benefit is rarely the final recipient.

In determining what "for the government" means, the district court asserted that "the statute indicates that the Government, as an entity, must be the intended recipient of the infringing product, as opposed to the public that the Government represents." Appx13. The district court's analysis on this point was lacking. Even though the federal government contracted for Moderna's vaccine, purchased Moderna's vaccine, and took full possession and control of Moderna's vaccine, the district court determined that Moderna's vaccine was not produced "for" the government because the end recipients were members of the public and not federal government employees.[2] This interpretation belies a basic understanding of property, ownership, and possession, and disregards the Court's approach on similar questions in a variety of contexts.

The Defendant-Appellants' brief does an excellent job of highlighting this false interpretation with a hypothetical about ordering pizza:

---

[2] It is understood that a limited number of Moderna's vaccine doses were used by federal government employees and the district court determined that Section 1498 did apply to those specific doses. Appx15.

13

> If John orders a dozen custom pizzas for a party—specifying size, toppings, and timing, those pizzas are "for" John and he is the "intended recipient" from the pizzeria's perspective. Who actually eats the slices John ordered—including whether John eats any himself—is irrelevant.

Appellants' Opening Br. at 36-37.

This hypothetical is can be easily reconstituted in endless ways, each demonstrating the false nature of the assertion that "for the United States" is conditioned upon what the United States does once it takes possession of a procured good.

Imagine if the United States had purchased 100 million doses of Moderna's vaccine and simply held it, administering it to no one. Logically, it would still be understood that those doses were manufactured "for the United States." However, the district court's analysis would be stuck in paralysis, unable to interpret the words "for the United States" without having a further action upon which to help it decide. This demonstrates the fallacy of the district court's approach. Whether a good was produced "for" the United States depends not upon what the United States does once it takes possession. Merely taking possession of the contracted for goods satisfies the requirement. This hypothetical reflects real world activity by the federal government, which of often procures goods and emergency supplies for placement in the government's strategic national stockpile.

14

### *a. The First Sale Doctrine provides guidance to the "for" inquiry.*

This principle of property and possession is well established in other contexts. In intellectual property, for example, a copyright owner may not dictate the resale price of a book. *See Bobbs-Merrill Co. v Straus*, 210 U.S. 339 (1908). Nor can patent holders. *See Bauer & Cie. v. O'Donnell*, 229 U.S. 1 (1913). Additional cases buttress the principle that post-sale restraints are generally ineffective. *See, e.g., Straus v. Victor Talking Machine Co.*, 243 U.S. 490 (1917). These cases were the basis for what came to be known as the "First Sale Doctrine," which has been re-affirmed time and time again. It applies when goods copyrighted in the United States are sold internationally and then re-imported. *See Quality King Distributors, Inc. v. L'anza Research International, Inc.*, 523 U.S. 135 (1998). It also applies when a work is manufactured in another country and imported into the United States as well. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013). Once a new owner takes possession of an item, that new owner controls the item and makes the decisions affecting it. The scope of possession and ownership cares not for what the owner actually does with the item subsequently. These principles are easily applied to the United States taking possession of the vaccine doses it contracted for and purchased from Moderna. The doses were "for" the United States because the United States contracted for them, purchased them, and took possession of them. It matters not that the United States distributed them to the American people.

15

### b. The principle of "exhaustion" provides guidance to the "for" inquiry.

The First Sale Doctrine is not the only "you own what you buy" principle. A line of cases highlights the principle of "exhaustion," which extinguishes ownership rights once a product or good has been passed on to another party. *See, e.g.*, *United States v. Univis Lens Co.*, 316 U.S. 241 (1942) (holding that a lost patent results in loss of right to control the purchaser's subsequent activity); *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617 (2008) (holding that an authorized sale of an article that substantially embodies a patent exhausts the patent holder's rights); *Impression Products, Inc. v. Lexmark International, Inc.*, 581 U.S. 360 (2017) (holding that a patentee's decision to sell a product exhausts patent rights). Again, the new owner's subsequent activity does not affect his or her authority or status as the owner.

### c. Establishment Clause and Free Exercise Clause cases provide guidance to the "for" inquiry.

The proposition that it matters not who the ultimate recipient of a benefit is in order to determine who the benefit is *for* is also well established in Establishment Clause and Free Exercise Clause caselaw. In *Zelman*, for example, a government program provided tuition aid for a select group of students to cover the cost of attending a school of their choice, which included religious schools among the options. *Zelman v. Simmons-Harris*, 536 US 639 (2002). Challengers to the law

argued that it violated the Establishment Clause of the First Amendment by providing government aid to religious schools. *Id.* at 648. The court disagreed, holding that the program did not violate the Establishment Clause because the beneficiaries are the parents (i.e. the benefit is *for* the parents and children) even if the financial benefit ultimately flows to a religious school. *Id.* At 662.

*Zelman* was re-affirmed and expanded *Espinoza. Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464 (2020) (holding that a "no-aid" provision prohibiting tuition assistance in a school choice program from flowing to a religious school violated the Free Exercise Clause). It was again re-affirmed and expanded in *Carson*. *Carson v. Makin*, 596 U.S. 767 (2022) (holding that the Free Exercise Clause prohibits exclusion of nonsectarian school options otherwise eligible under a school choice program).

In addition to school choice cases, a variety of First Amendment cases addressing Establishment Clause and Free Exercise Clause issues reinforce the principle that the party in control of a benefit is who that benefit is for even if the benefit is ultimately passed on to a different party. *See, e.g., Witters v Washington Dep't of Servs. for the Blind*, 474 U.S. 481, 487 (1986) ("Any aid . . . that ultimately flows to religious institutions does so only as a result of the genuinely independent and private choices of aid recipients."); *Mueller v. Allen*, 463 U.S. 388 (1983) (holding that aid ultimately flowing to religious schools did not violate the

17

Establishment Clause because the aid recipients were empowered to choose what was done with said aid.); *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1 (1993).

## CONCLUSION

The district court erred in determining that Moderna's vaccine was not produced "for the United States" and, thus, that Moderna cannot invoke the protections of Section 1498 against infringement claims with respect to vaccine doses that the United States government provided to the American public. The court's analysis on this point fell short.

The plain meaning of the statute is clear. The context of the statute and its history fully support the plain meaning. A host of cases and doctrines cut against the district court's insistence that the final recipient of a benefit must be who the benefit is "for." Rather, they support the consistent proposition that the intended beneficiary (i.e. who the benefit is "for") is the party in possession and control. That party controls the benefit and is free to pass it on to an ultimate end beneficiary, but that does not change the intent of a program or benefit.

It is enough to say that these principles are analogous to Moderna's vaccine produced for the United States government, but the facts in this case go above and beyond the aforementioned examples by laying out a detailed partnership, contract, and action, all providing context and intent that Moderna's vaccine produced through Operation Warp Speed was produced for the United States government as

18

its intended beneficiary. The United States government was free to use that benefit how it saw fit, or to pass it on to other parties, but those acts do not change the fact that the vaccine was produced *for* the United States, thereby satisfying the requirement of Section 1498(a).

TCCRI supports a textual approach to statutory interpretation, and the district court's analysis of Section 1498(a) does not pass muster. If its decision stands, the result will be a hesitancy on the part of America's valued private sector to step in and assist the American people through their government in times of need.

TCCRI urges this Court to remedy the district court's error with a proper reading of 28 U.S.C. § 1498(a).

Respectfully submitted this 5th day of June, 2026,

/s/ Russell H. Withers
Texas Conservative Coalition
Research Institute
919 Congress, Suite 400
Austin, TX 78701
Telephone: (512) 474-6042
Email: Russell@TXCCRI.org
*Attorney for Amicus Curiae*
*Texas Conservative Coalition*
*Research Institute*

19

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 4,241 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ Russell H. Withers
Russell H. Withers
Texas Conservative Coalition
Research Institute
919 Congress, Suite 400
Austin, TX 78701
Telephone: (512) 474-6042
Email: Russell@TXCCRI.org
*Attorney for Amicus Curiae*
*Texas Conservative Coalition*
*Research Institute*

# CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, I electronically filed the attached Amicus Curiae Brief in the case of *Arbutus Biopharma Corp. v. Moderna, Inc.*, No. 26-1581, with the clerk of this court by using the CM/ECF system.  I further certify that all counsel of record are registered CM/ECF users and have been served using that system.

/s/ Russell H. Withers
Russell H. Withers
Texas Conservative Coalition
Research Institute
919 Congress, Suite 400
Austin, TX 78701
Telephone: (512) 474-6042
Email: Russell@TXCCRI.org
*Attorney for Amicus Curiae*
*Texas Conservative Coalition*
*Research Institute*
