No. 26-1581

UNITED STATES COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

ARBUTUS BIOPHARMA CORPORATION, GENEVANT SCIENCES, GMBH,

*Plaintiffs-Appellees*,

v.

MODERNA, INC., MODERNATX, INC.,

*Defendants-Appellants*.

On Appeal from the U.S. District Court for the District of Delaware, The
Honorable Joshua D. Wolson, Case No. 1:22-cv-000252-JDW

**BRIEF FOR THE BAYH-DOLE COALITION AS AMICUS CURIAE
IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE**

OLEG KHARITON
DINSMORE & SHOHL LLP
255 E. Fifth St.
Suite 1900
Cincinnati, OH 45202
(513) 977-8246
oleg.khariton@dinsmore.com

BRIAN P. O'SHAUGHNESSY
DINSMORE & SHOHL LLP
801 Pennsylvania Ave., NW
Suite 610
Washington, DC 20004
(202) 372-9115
brian.oshaughnessy@dinsmore.com

*Attorneys for Amicus Curiae The Bayh-Dole Coalition*

July 15, 2026

## CERTIFICATE OF INTEREST

1.  **Represented Entities.** Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

    The Bayh-Dole Coalition.

2.  **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

    None.

3.  **Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

    None.

4.  **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

    None.

5.  **Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

    If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

    Not applicable (amicus/movant).

6.   **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated:  July 15, 2026

/s/ Oleg Khariton

Oleg Khariton
DINSMORE & SHOHL LLP
255 E. Fifth St.
Suite 1900
Cincinnati, OH 45202
(513) 977-8246

*Attorney for Amicus Curiae The Bayh-Dole Coalition*

**TABLE OF CONTENTS**

CERTIFICATE OF INTEREST................................................................................ i

INTEREST OF THE BAYH-DOLE COALITION ...................................................1

STATEMENT OF THE ISSUE................................................................................2

SUMMARY OF ARGUMENT.................................................................................3

ARGUMENT ...........................................................................................................4

CONCLUSION .......................................................................................................10

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ....11

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes:**

28 U.S.C. § 1498(a) ........................................................ 1, 2, 3, 4, 5, 6, 7

35 U.S.C. §§ 200-212: University and Small Business Patent Procedures Act of 1980 (Bayh-Dole Act) ...........................................................................2

**Other Authorities:**

U.S. Constitution, Art. I, Section 8, cl. 8 ................................................6

## INTEREST OF THE BAYH-DOLE COALITION

The Bayh-Dole Coalition ("Coalition") respectfully submits this brief as *amicus curiae* pursuant to Federal Rule of Appellate Procedure 29. All parties have consented to the filing of this brief.

At issue in this appeal is whether patentees may bring a patent infringement suit in federal district court against a contractor whose work was conducted under contract with the U.S. Army where the products of that contract did not go directly to United States government employees, or whether the patentee must proceed against the United States in the U.S. Court of Claims under 28 U.S.C. § 1498a).

The Coalition is not a party to this case and takes no position on the parties' substantive claims regarding patent infringement.

No party nor any party's counsel has authored this brief, in whole or in part.

No party nor any party's counsel has contributed any money to fund the preparing or submission of this brief.

No person – other than the amicus curiae, its members or its counsel – has contributed any money that was intended to fund preparing or submitting this brief.

The Coalition does not have any financial interest in the outcome of this case. The Coalition nonetheless has an interest in the outcome of this case insofar as it involves an interpretation of § 1498. The Coalition is of the view that an unduly broad interpretation of § 1498(a) will affect the traditional interpretation of the

1

Bayh-Dole Act, potentially enlarging the U.S. government's ability to exercise a statutorily limited "march-in" power as to licenses executed by owners of Bayh-Dole patents.

Both as to § 1498(a) as well as to the Bayh-Dole Act, an expansion of the government's responsibility or power would undermine the value of those inventions, diminish the appeal of related licenses, and decrease the likelihood that such inventions will be developed into useful products.

The Coalition is a diverse group of individuals, universities, and innovation-oriented organizations and institutions dedicated to promoting and celebrating innovation, particularly that derived from public-private partnerships made possible by the Bayh-Dole Act (or the "University and Small Business Patent Procedures Act of 1980"; Title 35 U.S.C. §§ 200-212; the "Act"). Our members stand united against initiatives and developments that would hinder or diminish innovation in general, and especially those that would undermine the success of the Act.

## STATEMENT OF THE ISSUE

In 2020, Appellants Moderna, Inc. and ModernaTX, Inc. (collectively, "Moderna") entered into a procurement contract with the U.S. Army. Appellees have asserted that in fulfilling that contract for the manufacture of certain vaccines, Moderna infringed one or more of their patents. Moderna responded that any

action for infringement by Moderna in fulfilling that U.S. government contract must be brought against the U.S. government in the Court of Claims pursuant to 28 U.S.C. § 1498(a).  At issue here is whether the district court correctly held that the products manufactured by Moderna for the U.S. government but distributed to the public, and thus not used by U.S. government employees, were not products manufactured "for the government" pursuant to § 1498(a).

## SUMMARY OF ARGUMENT

In crafting § 1498, Congress created an eminent domain statue. The U.S. government may, where necessary, effectively commandeer patent-protected inventions for use or manufacture by or for the United States without fear of being enjoined from doing so; but in return, the U.S. government must make the patent owner whole by surrendering its sovereign immunity, which would otherwise preclude the patent owner from seeking recompense for the infringement.  Thus, § 1498 <u>protects</u> patent owners by codifying the patent owner's right to reasonable and entire compensation from the government for its use and manufacture.  If, however, the invention so manufactured is merely produced at the behest of the U.S. government and subsequently passed through to third parties, it has not been produced "for the United States."  To hold otherwise would open the floodgates for patent infringement by the mere expedient of adding the government as a party to the contract.

## ARGUMENT

Passed in 1980, the Bayh-Dole Act transformed America's technology transfer system by empowering universities, nonprofit research centers, and small businesses to own, patent, and license inventions that had been supported, at least in part, by federal funding. Under the Act, those entities own such inventions outright, subject only to limited rights reserved by the federal government. Prior to passage of the Act, the federal government held title to any invention and associated patents that were derived of any amount of federal funding. The ownership of those patents, as well as the responsibility for licensing them for commercial development, thus resided solely with the U.S. government.

Regrettably, however, tens of thousands of important technological innovations went unlicensed. As a result, they were not developed to practical application, and important technological innovations gathered dust on the proverbial laboratory shelf. Taxpayers were deprived of the benefits of the research they funded.

By decentralizing that function, and especially the ability to license out the development of federally funded innovation to those willing to risk the capital and resources toward developing that research into useful products, the Bayh-Dole Act flipped the paradigm.

4

Since its passage, the Act has led to the creation of more than 15,000 startup companies, and more than 6.5 million American jobs. Those developments would not have been possible without strong, predictable intellectual property rights, good and clear title, and the reliability of contractual arrangements conveying exclusive rights to those inventions for development by third parties.

While the patents in suit might not be subject to the Bayh-Dole Act, a ruling endorsing a broad interpretation of § 1498 would nonetheless diminish the value of patents generally, including Bayh-Dole patents, and thereby severely diminish our research and development ecosystem. That is why the Coalition offers its perspective on that issue and urges that a broad interpretation of § 1498 will have serious, far-reaching deleterious implications for innovation generally, and especially for the continued success of the Bayh-Dole Act.

By casting doubt on the reliability of U.S. patent rights and related license agreements, the interpretation of § 1498(a) proposed by Appellants threatens American innovation, the Constitutional mandate for the U.S. patent system, and the many IP-intensive industries that depend on meritorious, predictable, and enforceable intellectual property rights.

As written, § 1498(a) provides:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner… the owner's remedy shall be by action against the United States

in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

The purpose of the statute is analogous to an eminent domain statute, *i.e.*, enabling the government to fulfill its essential purpose while nonetheless protecting patent owners from infringement by the government. In the event the government requires the use of specific patented technology, § 1498(a) grants the patent owner the right to sue the government, notwithstanding traditional notions of sovereign immunity, and to secure "reasonable and entire compensation" for the government's use.

In other words, § 1498(a) makes plain that no entity — not even the federal government — can invade the private property right intrinsic to the patent grant without making the property owner whole. It is a compensatory statute, not a license to steal or arbitrarily invade the exclusive right of the patent owner. The statute serves to strengthen — not weaken — the reliability of the property right secured by a patent. This is entirely consistent with the Framer's intent to promote the progress of Useful Arts by granting Congress the power to secure for inventors the exclusive right to their discoveries.  U.S. Const., Art. I, Sect. 8, cl. 8.

However, Moderna has urged a broader interpretation of § 1498(a) that is not consistent with that intent or with precedent.  Moderna proposes a holding that any contract to which the U.S. government is a party, regardless of its purpose or its

6

ultimate beneficiary, is a use "by or for the government" as § 1498(a) expressly requires.

That interpretation of "government use" is not consistent with the Congress's intent, or related precedent. But, if adopted here, it would mean that the government could effectively seize a privately held patent for any product merely by contracting to purchase that product for any purpose, regardless of whether the patentee or its licensee(s) were meeting that need or capable of meeting that need. The text and legislative history of § 1498(a) make it clear that it is not to apply to products being made by the private sector merely because those products are purchased by the government, and especially where the government purchases those products for other private sector entities.

An expansive interpretation of § 1498(a), and specifically "government use," would have serious adverse consequences for private-sector innovation generally, and particularly for public-private partnerships, both of which are critical to our nation's health and well-being, prosperity, and national security. It would impair incentives for innovation in such critical areas as healthcare, communications, sophisticated electronics, aerospace, and weapons systems. Indeed, it would be the exception that swallows the rule. It would undermine the very purpose of § 1498, and ultimately the entire U.S. patent system.

7

The Coalition stands firmly for the well-established proposition that reliable, enforceable property rights in the form of patents, as well as the principles inherent in our longstanding recognition of the freedom of contract, are essential to a dynamic, prosperous, innovation-oriented economy. Strengthening and extending intellectual property protections and related agreements is a principal goal of the Bayh-Dole Act.  The merits of the goal and the means to achieve it through the Bayh-Dole Act are self-evident in that the Act ignited an unprecedented era of U.S. technological innovation that continues to this day. Those principles and practices apply equally well to the proper interpretation of § 1498(a) and argue for a careful and constrained interpretation consistent with the language of the statute and precedent.

Moderna argues that the government's unilateral insertion of a conventional indemnification clause under the Federal Acquisition Regulations ("FAR") insulates Moderna from liability for any infringement of any patent. However, that argument would seem to overlook express limitations within the statute as to how and by whom the patented technology is ultimately deployed.

Given the profound implications for innovation presented by this case, including the future of healthcare and national security, it is imperative that the court carefully consider these issues.

Without a strong, reliable system of alienable and enforceable intellectual property rights, the private sector incentive to devote substantial resources over many years in developing life-saving therapies, integrated communications systems, efficient and reliable energy solutions, and other valuable technologies would disappear. Investment in unpredictable and risky ventures would go overseas, fueling foreign development of competing technologies, including jurisdictions that do not share our democratic values and devotion to free and open markets. Our greatest sources of disruptive innovation – the upstart independent inventor and the entrepreneur – would struggle to secure funding for the development of new, improved products and industries, and resulting revolutionary advances will be still more rare.

If the government were to have the power to seize intellectual property rights merely by procuring products by contract from anyone in the private sector, regardless of need or purpose, that bleak future may well be upon us. The Bayh-Dole Coalition urges the court to take these views into consideration in addressing the issues presented in this case.

## CONCLUSION

For the foregoing reasons, the judgment of the district court in favor of the plaintiffs should be affirmed.

Dated: July 15, 2026                                            Respectfully submitted,


*/s/ Oleg Khariton*
Oleg Khariton
DINSMORE & SHOHL LLP
255 E. Fifth St.
Suite 1900
Cincinnati, OH 45202
(513) 977-8246
oleg.khariton@dinsmore.com

Brian P. O'Shaughnessy
DINSMORE & SHOHL, LLP
801 Pennsylvania Ave., NW
Suite 610
Washington, DC 20004
(202) 372-9115
brian.oshaughnessy@dinsmore.com

*Attorneys for Amicus Curiae The*
*Bayh-Dole Coalition*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally spaced typeface and includes 2,508 words.

2. The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated: July 15, 2026

*/s/ Oleg Khariton*
Oleg Khariton
DINSMORE & SHOHL LLP
255 E. Fifth St.
Suite 1900
Cincinnati, OH 45202
(513) 977-8246

*Attorney for Amicus Curiae The Bayh-Dole Coalition*