No. 2026-1581

---

# In The United States Court of Appeals for the Federal Circuit

---

ARBUTUS BIOPHARMA CORP. & GENEVANT SCIENCES GMBH,

*Plaintiffs-Appellees,*

v.

MODERNA, INC. AND MODERNATX, INC.,

*Defendants-Appellants.*

---

Appeal from the United States District Court for the District of Delaware, Case No. 1:22-cv-00252, U.S. District Judge Joshua D. Wolson

---

**BRIEF OF 17 FORMER JUDGES, FORMER OFFICIALS, AND ACADEMIC SCHOLARS AS AMICI CURIAE**

Respectfully submitted,

Marc E. Hankin, Esq.
**HANKIN PATENT LAW, APC dba**
**HPL INTELLECTUAL**
**PROPERTY LAW**
*11414 Thurston Circle*
*Los Angeles, CA  90049*
*(310) 979-3600*
*Marc@HPL.Law*
***Counsel for 17 Amici Curiae***

**CERTIFICATE OF INTEREST**

The Undersigned Counsel of Record for 17 Amici Curiae hereby certifies that the following information and any attached sheets are accurate and complete to the best of his knowledge. This Certificate of Interest is submitted by Counsel for 17 Amici Curiae pursuant to Federal Circuit Rule 47.4 and Federal Circuit Form 9.

1. **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case (institutional affiliations listed in Appendix):

   The Honorable Paul R. Michel
   The Honorable Kathleen M. O'Malley
   The Honorable Susan G. Braden
   The Honorable Ronald A. Cass
   Daniel R. Cahoy
   Arthur Daemmrich
   Richard A. Epstein
   Bowman Heiden
   Keith N. Hylton
   Layne Keele
   Joshua Kresh
   Adam J. MacLeod
   Geoffrey A. Manne
   Emily Michiko Morris
   Adam Mossoff
   Lateef Mtima
   Kristen Jakobsen Osenga

2. **Real Parties in Interest.** Provide the full names of all real parties in interest for the represented entities. Do not list real parties if they are the same as the entities listed above: n/a.

3. **Parent Corporation and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities: None.

4.  **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court:
(a):  Stephen B. Brauerman and Ronald P. Golden III of Bayard, P.A. appeared in the District Court for most of these amici curiae.

5.  **Authorship and Funding.**  Pursuant to Rule 29(a)(4)(E) of the Federal Rules of Appellate Procedure, the undersigned counsel certifies that: (1) no party's counsel authored this brief in whole or in part; (2) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and (3) no person—other than the amici curiae, or its counsel—contributed money that was intended to fund preparing or submitting the brief.

6.  **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case:  Not applicable.

7. **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees):  Not applicable.

This brief is submitted in accordance with Rule 29(a) of the Federal Rules of Appellate Procedure.  All parties have consented to the filing of this brief.


Dated:  July 15, 2026                    Respectfully submitted,


                                         **HANKIN PATENT LAW, APC dba**

                                         **HPL INTELLECTUAL PROPERTY LAW**

                                         /Marc E. Hankin/

                                         Marc E. Hankin

                                         ***Counsel for 17 Amici Curiae***

**TABLE OF CONTENTS**

INTEREST OF AMICUS CURIAE................................................................1

SUMMARY OF ARGUMENT ....................................................................1

ARGUMENT ..............................................................................................3

I.    Section 1498(a) is an Eminent Domain Statute ................................3

   A.  The Provenance of § 1498(a) ..........................................................3

   B.  The Legislative History of § 1498(a) Confirms it is an Eminent

       Domain Statute ..............................................................................6

   C.  The Text of § 1498(a) Confirms it is an Eminent Domain Statute .........6

II.   Judicial Interpretation of § 1498(a) Confirms it is an Eminent Domain

      Statute Inapposite to Private Transactions in the Marketplace .................11

APPENDIX OF AMICI............................................................... A-1

*FULL LIST OF AMICI CURIAE*\*.................................................... A-1

# TABLE OF AUTHORITIES

**Cases**

*Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*, 583 F.3d 1371 (Fed. Cir. 2009) ................................................................ 13, 14, 15, 16

*Arbutus Biopharma Corp. & Genevant Sciences GMBH v. Moderna, Inc.*, No. CV 1:22-cv-00252-JDW, 2026 WL 266389 (D. Del. Feb. 2, 2026) ......................3, 12

*Arbutus Biopharma Corp. v. Moderna, Inc.*, 638 F. Supp. 3d 397 (D. Del. 2022) 12, 16

*Brady v. Atlantic Works*, 3 F. Cas. 1190 (C.C.D. Mass. 1876) ................................6

*Cammeyer v. Newton*, 94 U.S. 225 (1876) ................................................................5

*Carter-Wallace, Inc. v. United States*, 449 F.2d 1374 (Ct. Cl. 1971) ....................13

*Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell*, 399 F.2d 913 (5th Cir. 1968). 11

*Decca Ltd. v. United States*, 544 F.2d 1070 (Ct. Cl. 1976) ....................................13

*Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627 (1999) ................................................................................................................7

*Horne v. U.S. Dept. of Agriculture*, 135 S. Ct. 2419 (2015) ...................................7

*Hughes Aircraft Co. v. Messerschmitt-Boelkow-Blohm*, 625 F.2d 580 (5th Cir. 1980) ................................................................................................................11

*Hughes Aircraft Co. v. United States*, 534 F.2d 889 (Ct. Cl. 1976) ........................11

*IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359 (Fed. Cir. 2014) ....................12

*Irving Air Chute Co. v. United States*, 93 F. Supp. 633 (Ct. Cl. 1950) ...................13

*James v. Campbell*, 104 U.S. 356 (1882) ................................................................7

*Larson v. United States*, 26 Cl. Ct. 365 (1992) ................................................ 15, 16

*McKeever v. United States*, 14 Ct. Cl. 396 (1878) ...............................................6, 10

*United States v. Adams*, 383 U.S. 39 (1966) ..........................................................11

*United States v. Burns*, 79 U.S. 246 (1870) ........................................................5, 10

**Statutes**

28 U.S.C. § 1498(a) ............................................................................................ passim

**Other Authorities**

45 Cong. Rec. 8755, 8756 (1910) ............................................................................9

Act of July 1, 1918, ch. 114, 40 Stat. 704, 705 (1918).............................................10

Act of October 31, 1942, Pub. L. 768, § 6, 77th Cong. 2d Sess., 56 Stat. 1013, 1014 (1942)..............................................................................................10

Adam Mossoff, *Patents as Constitutional Private Property: The Historical Protection of Patents under the Takings Clause*, 87 B.U. L. REV. 689, 712-14 (2007).....................................................................................................7

Adam Mossoff, *The False Promise of Breaking Patents to Lower Drug Prices*, 98 ST. JOHN'S L. REV. 287, 292-310 (2024)..............................................17

H.R. Rep. No. 61-1288, at 1-4 ....................................................................9

H.R. Rep. No. 61-1288, at 3 (1910)..............................................................9

Milton Silverman & Philip R. Lee, *Pills, Profits, and Politics* 187 (1974) ...........17

Susan G. Braden & Joshua A. Kresh, *Section 1498(A) is Not a Rx to Reduce Drug Prices*, 77 FOOD & DRUG L.J. 274 (2022) ............................................17

## INTEREST OF AMICI CURIAE

*Amici curiae* are 17 former judges, former federal officials, and academic scholars who have expertise in patent law, takings law, or both. They have an interest in ensuring the integrity of the patent system and the proper application of the eminent domain power in the use of patented inventions by and for the federal government. *Amici* have no stake in the parties or in the outcome of this case. A full list of signatories to this brief is set forth in the Appendix starting on page A-1.[1]

## SUMMARY OF ARGUMENT

The District of Delaware correctly held that 28 U.S.C. § 1498(a) is inapplicable to a private company that commits patent infringement after entering into a contract with the federal government for payment of vaccine doses distributed by private companies for use by private citizens. *See Arbutus Biopharma Corp. & Genevant Sciences GMBH v. Moderna, Inc.*, No. CV 1:22-cv-00252-JDW, 2026 WL 266389 (D. Del. Feb. 2, 2026). The respondent and other *amici* address the statutory construction and the modern case law demonstrating that the unauthorized use of a patented invention by a private party in private transactions in the marketplace is not a "use or manufacture for the Government," 28 U.S.C. § 1498(a), even if the

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), no counsel for a party authored this brief in whole or in part, and no person other than *Amici* or their counsel contributed money that was intended to fund preparing or submitting the brief.

government subsidizes the transaction from the public fisc. In support, *Amici* further explain that § 1498(a) is an eminent domain statute that is inapplicable to the portion of the contract between Moderna and the federal government in which the government subsidized vaccine doses made for and used by the general public. Thus, § 1498(a) is inapposite to this portion of the contract entered into between Moderna and the federal government under Operation Warp Speed, as opposed to the federal government's payment for vaccine doses for use by federal employees and military personnel.

The C-100 contract between Moderna, Inc. and the federal government states that the federal government will pay for the manufacture and use of vaccine doses "for the United States Government (USG) and the US population." In this case, Moderna elides the express distinction in the C-100 contract between the federal government's payment for vaccine doses for federal employees and military personnel and payment for the vaccine doses "for . . . the US population." The federal government's decision to subsidize vaccine doses "for . . . the US population" does not meet the statutory requirement in § 1498(a) that a patented invention is made or used "by or for the United States" or that a contractor like Moderna made or used a patented invention "for the Government."

This is a critical distinction in applying § 1498(a), as its plain text, legislative history, and supporting historical case law confirm that it is an eminent domain

2

statute. It is inapplicable to the federal government's policy decisions to subsidize private transactions in the marketplace, such as paying for the costs of private citizens receiving vaccine doses from private companies. This statute authorizes the U.S. Court of Federal Claims to adjudicate a claim by a patent owner for "reasonable and entire compensation" when its patented invention is "used or manufactured *by or for the United States* without license of the owner." *Id*. (emphasis added). Thus, this Court should affirm the district court's decision that § 1498(a) is inapplicable to the patent infringement claim by Arbutus Biopharma Corporation and Genavent Sciences GBMH against Moderna for the unauthorized manufacture and use of vaccine doses "for the . . . US population," as distinguished from the express portion of the C-100 contract in which the federal government paid for vaccine doses to be manufactured and used "for the United States Government."

## ARGUMENT

### I.     Section 1498(a) is an Eminent Domain Statute

#### A. The Provenance of § 1498(a)

The provenance of § 1498(a) is found in many nineteenth-century federal court decisions that patents are private property rights secured under the Takings Clause of the U.S. Constitution. In these decisions, the Supreme Court and lower federal courts consistently held that patents are private property secured under the Constitution. They include, for example:

3

- "[T]he government cannot, after the patent is issued, make use of the improvement any more than a private individual, without license of the inventor or making compensation to him." *United States v. Burns*, 79 U.S. 246, 252 (1870).

- A patent owner can seek compensation for the unauthorized use of his patented invention by federal officials because "[p]rivate property … shall not be taken for public use without just compensation." *Cammeyer v. Newton*, 94 U.S. 225, 234 (1876).

- "Inventions secured by letters-patent are property in the holder of the patent, and as such are as much entitled to protection as any other property. . . . Private property, the constitution provides, shall not be taken for public use without just compensation . . . ." *Brady v. Atlantic Works*, 3 F. Cas. 1190, 1192 (C.C.D. Mass. 1876) (Clifford, Circuit Justice), *rev'd on other grounds*, 107 U.S. 192 (1883).

- A patent is not a "grant" of special privilege; the text and structure of the Constitution, as well as court decisions, establish that patents are property rights secured under the Takings Clause. *McKeever v. United States*, 14 Ct. Cl. 396, 421 (1878).

Despite these many court decisions, courts expressed confusion at the turn of the twentieth century concerning their jurisdiction to adjudicate a takings claim by a

4

patent owner. *See* Adam Mossoff, *Patents as Constitutional Private Property: The Historical Protection of Patents under the Takings Clause*, 87 B.U. L. REV. 689, 712-14 (2007). Congress thus enacted in 1910 the predecessor statute to § 1498(a) to resolve this constitutional confusion. *See* Act of June 26, 1910, ch. 423, 36 Stat. 851, 851-52 (1910) (codified as amended in 28 U.S.C. § 1498(a)). The text and legislative history confirm that it is an eminent domain statute authorizing suits against the government and its agents.

The modern Supreme Court has confirmed the long-standing rule that patents are property rights secured under the Takings Clause and Due Process Clauses. Almost thirty years ago, the Supreme Court held that patents are "property" under the Due Process Clause of the Fourteenth Amendment. *See Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642–43 (1999). In 2015, the Supreme Court approvingly quoted an 1882 decision stating that "[a patent] confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser." *Horne v. U.S. Dept. of Agriculture*, 135 S. Ct. 2419, 2427 (2015) (quoting *James v. Campbell*, 104 U.S. 356, 358 (1882) (Roberts, CJ).

5

**B. The Legislative History of § 1498(a) Confirms it is an Eminent Domain Statute**

The House committee report for the bill that became § 1498(a) expressly stated that the federal government was using patents without authorization "in flat violation of [the Takings Clause] and the decisions of the Supreme Court." H.R. Rep. No. 61-1288, at 3 (1910). During the congressional debates leading up to the enactment of § 1498(a), the bill's sponsor, Representative Currier, emphasized that the legislation "does not create any liability; it simply gives a remedy upon an existing liability" under the Takings Clause. 45 Cong. Rec. 8755, 8756 (1910). Throughout the congressional debates, legislators repeatedly referenced the earlier-cited court decisions, *see supra* Part I.A, that consistently stated that patent owners have a constitutional right under the Takings Clause to receive just compensation for an unauthorized use of their patented inventions by federal officials. *See* H.R. Rep. No. 61-1288, at 1-4.

**C. The Text of § 1498(a) Confirms it is an Eminent Domain Statute**

The court precedents and legislative history confirm the plain meaning of the text of § 1498(a), which simply authorizes a court to hear claims for reasonable compensation arising from exercises of the government's eminent domain power. Section 1498(a) states that a patent owner can sue the federal government in the Court of Federal Claims (originally the Court of Claims) for "recovery of his

6

reasonable and entire compensation" when a patented invention is "used or manufactured by or for the United States without license of the owner."

In 1918, after extensive federal procurement efforts with contractors during World War One, Congress amended § 1498(a) to authorize lawsuits by patent owners for reasonable compensation from the government when federal contractors infringe their patents. *See* Act of July 1, 1918, ch. 114, 40 Stat. 704, 705 (1918) (codified as amended in 28 U.S.C. § 1498(a)). This amendment added the "used or manufactured by or for the United States" that currently exists in § 1498(a). *Id.* Consistent with its function as an eminent domain statute, the statute was amended again shortly after the U.S. entered World War Two, requiring suits against the government for compensation for patent infringement by federal contractors, but again this amendment is limited to only when contractors make or use a patented invention "for the Government." Act of October 31, 1942, Pub. L. 768, § 6, 77th Cong. 2d Sess., 56 Stat. 1013, 1014 (1942) (codified as amended in 28 U.S.C. § 1498(a)).

In this case, the C-100 contract between Moderna and the federal government expressly distinguishes between the vaccine doses acquired for use by the federal government versus the vaccine doses paid for by the federal government for use by the private citizens comprising the general public. In the C.1 Scope provision, the contract states that the federal government is paying for "manufacturing of vaccine

doses . . . for the United States Government (USG) *and* the US population" D.I. 520-1 § C.1. (emphasis added). In provision C.1.1.1, the C-100 contract further stipulates that the federal government is paying for "large scale manufacturing so that vaccine doses . . . are immediately available for *nationwide access* . . . and the medical countermeasures are authorized for *widespread use*." *Id.* § C.1.1.1.

The federal government's payment of manufacture and use of vaccine doses "for the . . . US population" and "for nationwide access" is not an example of a contractor making and using a patented invention "for the United States," 35 U.S.C. § 1498(a), because those vaccine doses were distributed by private companies for use by private citizens. The "by and for the United States" text in § 1498(a) limits its applicability to manufacture or use of patented inventions by the federal government, or by federal contractors acting "for the Government," such as the unauthorized uses of patented inventions for the U.S. military in the nineteenth century. *See Burns*, 79 U.S. at 251-54 (unauthorized use of patented tent by U.S. military); *McKeever*, 14 Ct. Cl. at 417 (unauthorized use of a patented cartridge by U.S. military).

The twentieth-century lawsuits brought by patent owners under § 1498(a) confirm the express limitation of this statute to classic examples of the federal government's exercise of its eminent domain power in acquiring property for use by the U.S. military or federal agencies. *See, e.g., Hughes Aircraft Co. v.*

*Messerschmitt-Boelkow-Blohm*, 625 F.2d 580 (5th Cir. 1980); *Hughes Aircraft Co. v. United States*, 534 F.2d 889 (Ct. Cl. 1976); *Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell*, 399 F.2d 913 (5th Cir. 1968), *cert. denied*, 393 U.S. 1050 (1969). One famous § 1498(a) case that is included in most patent law casebooks used in law schools arose from the U.S. military's unauthorized use of a patented battery during World War Two. *See United States v. Adams*, 383 U.S. 39 (1966).

In sum, the plain text of § 1498(a) and its legislative history make clear that it does not apply to products and services that are made for private companies to distribute for "widespread use" by private citizens across the nation, even when paid for by the public fisc. D.I. 520-1 § C.1.1.1. Although the C-100 contract provides for the authorization or consent of the Government, this consent triggers this statute's indemnity protections for federal contractors only when such manufacture or use is "for the Government." 35 U.S.C. § 1498(a). Thus, § 1498(a) applies only to the portion of the C-100 contract by which the government paid for the manufacture of vaccine doses "for the United States Government," *id.*, such as for "use" by federal employees and military personnel. For the other portion of the C-100 contract providing for payment of vaccine doses for "the US population," § 1498(a) is inapplicable as a matter of law. For the nationwide access to its vaccine doses by the US population generally, Moderna's contract with the federal government was entirely *for use by private patients* in the U.S. healthcare market.

9

The district court first correctly denied Moderna's motion to dismiss by recognizing as a matter of law that § 1498(a) applies only when a contractor makes or uses a patented invention "for the Government." *Arbutus Biopharma Corp. v. Moderna, Inc.*, 638 F. Supp. 3d 397, 408 (D. Del. 2022), *aff'd*, No. CV 22-252, 2023 WL 2455979 (D. Del. Mar. 10, 2023). The federal government may have derived an incidental benefit from resolution of the COVID-19 public health emergency through the *private distribution and use of vaccines by private patients*, but the district court rightly recognized that "[i]ncidental benefit to the government is insufficient" to trigger § 1498(a) as an affirmative defense in a patent infringement lawsuit. *Id.* at 405 (quoting *IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1361 (Fed. Cir. 2014)). In denying Moderna's subsequent motion for summary judgment, the district court correctly found that the C-100 contract did not contain additional facts that altered its prior decisions on the pleadings that the federal government's payment for vaccine doses for use by private citizens in the general public "did not authorize the manufacture or use of vaccines for the Government." *Arbutus*, 2026 WL 266389, at *6. Given the plain meaning of the text of § 1498(a) and the historical precedents ratified by Congress in 1910 in enacting this text in the predecessor statute of § 1498(a), the district court's three decisions all are correct and should be affirmed by this Court.

10

**II.    Judicial Interpretation of § 1498(a) Confirms it is an Eminent Domain Statute Inapposite to Private Transactions in the Marketplace**

The function of § 1498(a) in providing a right to sue the federal government in the Court of Federal Claims for the unauthorized use of a patented invention by the federal government exercising its eminent domain power is confirmed by modern precedents. Federal courts have consistently recognized for over half a century that § 1498 is an eminent domain statute. *See Decca Ltd. v. United States*, 544 F.2d 1070, 1082 (Ct. Cl. 1976) ("It is [the government's] taking of a license, without compensation, that is, under an eminent domain theory, the basis for a suit under § 1498."); *Carter-Wallace, Inc. v. United States*, 449 F.2d 1374, 1390 (Ct. Cl. 1971) (Nichols, J., concurring) (stating that § 1498(a) authorizes a claim in court "to recover just compensation for a taking under the power of Eminent Domain"); *Irving Air Chute Co. v. United States*, 93 F. Supp. 633, 635 (Ct. Cl. 1950) (stating that § 1498(a) is "an eminent domain statute").

Consistent with its function as an eminent domain statute providing a cause of action for the unauthorized use of a patented invention by and for the government, this Court recognized in *Advanced Software Design Corp. v. Federal Reserve Bank of St. Louis*, 583 F.3d 1371 (Fed. Cir. 2009), that the federal government must be a beneficiary of an unauthorized use of a patented invention to apply § 1498(a). In *Advanced Software*, this Court held that a regional Federal Reserve bank acted "for the government" when it used a process for detecting fraudulent Treasury checks

11

that infringed a patent on this process. The Federal Circuit concluded that "the benefits to the government of using the [infringing fraud-detection] technology on Treasury checks are *not incidental effects* of private interests." *Id.* at 1379 (emphasis added). Thus, the *Advanced Software* court concluded that the patent owner had to proceed in a lawsuit against the federal government under § 1498(a), and not in a lawsuit against the specific Federal Reserve bank that infringed its patent.

Given the formal relationship between the U.S. Government and the Federal Reserve System in managing the official currency printed by the U.S. Bureau of Engraving and Printing in the U.S. Department of Treasury, *Advanced Software* is correct, legally and commonsensically. *Id.* at 1377 ("[T]he government has an interest in preventing any interference with its fiscal agent, the Federal Reserve Banks, in performing work *for the government . . . .*") (quoting U.S. government's motion to participate in oral argument) (emphasis added). The Federal Reserve System is not the same legal or commercial entity as a private company that manufactures and sells a drug or vaccine dose for distribution and use by private citizens in the healthcare market.

The *Advanced Software* court expressly distinguished the Federal Reserve System as an entity that exists "for the Government" in applying § 1498(a) from a private healthcare company paid by Medicare to provide a medical device to a private patient, which the Court of Federal Claims had previously held in *Larson v.*

*United States*, 26 Cl. Ct. 365, 369 (1992) that § 1498(a) did not apply. In *Larson*, a patent owner sued a private medical company for infringing its patent on a medical device (a splint), and the splints were paid for use by patients through government programs such as Medicaid or Medicare. *Id.* at 367-68. Given that "the government reimbursed the cost [of the infringing splint] through Medicare and other federal programs," *id.*, the defendant argued that the patent owner's lawsuit must proceed against the government under § 1498(a). The *Larson* court rejected this argument, stating that "government reimbursement of medical care expenses did not constitute a use of a medical patent for government purposes," as required by the text of § 1498(a) in authorizing lawsuits against the federal government for compensation. *Id.* at 369. Similarly in this case, the federal government's payment to Moderna for its vaccine doses to be distributed "for the . . . US population" in the healthcare market for "nationwide access" by private individuals, D.I. 520-1 § C.1.1.1, is not a use of a patented invention "for the Government." 28 U.S.C. § 1498(a).

In *Advanced Software* seventeen years later, this Court reaffirmed the key holding of *Larson* that "[t]he fact that the government has an interest in the [healthcare] program generally, or *funds or reimburses all or part of its costs*, is too remote to make the government the program's beneficiary for the purposes underlying § 1498." *Advanced Software*, 583 F.3d at 1379 (quoting *Larson*, 26 Ct. Cl. at 369) (emphasis added). Scholars have similarly recognized this textual

13

limitation in § 1498(a). One monograph that is often cited in the drug pricing policy debates states that § 1498(a) must be "modified" if it is "to apply to governmental payment for drugs prescribed for beneficiaries of such federal health programs as Medicare and Medicaid." Milton Silverman & Philip R. Lee, *Pills, Profits, and Politics* 187 (1974).[2]

*Advanced Software* and *Larson* correctly construed and applied § 1498(a) as an eminent domain statute that applies only to unauthorized uses of patented inventions by and for the federal government. If misapplied beyond its plain text and statutory function, as Moderna argues for in this case, this would "mean that every government-funded product used to advance any policy goal articulated by the U.S. Government—such as IV needles to fight HIV to cancer drugs to fight the war on cancer—would be subject to a § 1498(a) defense." *Arbutus Biopharma Corp.*, 638 F. Supp. 3d at 408 (describing logical consequences of Moderna's argument). Given widespread federal funding of healthcare services today, Moderna's argument would convert every patent infringement lawsuit arising from patents covering drugs or other healthcare treatments into a suit for compensation against the federal

---

[2] For more recent scholarship analyzing § 1498(a) and reaching the same conclusion, *see* Adam Mossoff, *The False Promise of Breaking Patents to Lower Drug Prices*, 98 ST. JOHN'S L. REV. 287, 292-310 (2024); Susan G. Braden & Joshua A. Kresh, *Section 1498(A) is Not a Rx to Reduce Drug Prices*, 77 FOOD & DRUG L.J. 274 (2022).

government. The absence of any limiting principle in Moderna's argument reveals how divorced its argument is from the text, congressional intent, and judicial interpretation of § 1498(a) as an eminent domain statute.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's denial of Moderna's motion for summary judgment as applied to the vaccine doses manufactured by Moderna under the C-100 contract for use by private citizens comprising the general U.S. population.

Dated:  July 15, 2026                    Respectfully submitted,

**HANKIN PATENT LAW, APC dba HPL INTELLECTUAL PROPERTY LAW**

*/Marc E. Hankin/*
Marc E. Hankin

***Counsel for 17 Amici Curiae***

15

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Circuit Rule 29(b) because it contains 3,482 words and 291 lines excluding the parts of the brief excluded by Fed. R. App. P. 32(f) and Federal Circuit Rule 32(b)(2), as determined by the word-counting feature of Microsoft Word, and is therefore not more than one half of the maximum page length authorized for a party's principal brief.

This brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, including serifs, using Microsoft Word 2016 in Times New Roman 14-point font.

Dated:  July 15, 2026                    Respectfully submitted,

                                         **HANKIN PATENT LAW, APC dba HPL INTELLECTUAL PROPERTY LAW**

                                         */Marc E. Hankin/*
                                         Marc E. Hankin

                                         ***Counsel for 17 Amici Curiae***

16

# APPENDIX OF AMICI

## *Full List of Amici Curiae\**

The Honorable Paul R. Michel
*Chief Judge (Retired)*
United States Court of Appeals for the Federal Circuit

The Honorable Kathleen M. O'Malley
*Circuit Judge (Retired)*
United States Court of Appeals for the Federal Circuit

The Honorable Susan G. Braden
*Chief Judge (Retired)*
United States Court of Federal Claims

The Honorable Ronald A. Cass
*Former Vice-Chairman*
United States International Trade Commission
*Dean Emeritus*
Boston University School of Law

Daniel R. Cahoy
*Robert G. & Caroline Schwartz Professor of Business Law*
Smeal College of Business
Penn State University

Arthur Daemmrich
*Professor*
School for the Future of Innovation in Society
Arizona State University

---

\* Institutions of all signatories are for identification purposes only. The undersigned do not purport to speak for their institutions, and the views of *amici* should not be attributed to these institutions.

Richard A. Epstein
*Laurence A. Tisch Professor of Law*
New York University School of Law
*James Parker Hall Distinguished Service Professor of Law Emeritus*
University of Chicago Law School

Bowman Heiden
*Executive Director*
Tusher Strategic Initiative for Technology Leadership
University of California, Berkeley

Keith N. Hylton
*William Fairfield Warren Distinguished Professor*
Boston University School of Law

Layne Keele
*Professor of Law*
Cumberland School of Law
Samford University

Joshua Kresh
*Executive Director*
IPPI: The IP Policy Institute
University of Akron School of Law

Adam J. MacLeod
*Professor of Law*
Columbus School of Law
Catholic University of America

Geoffrey A. Manne
*President and Founder*
International Center for Law and Economics

Emily Michiko Morris
*David L. Brennan Endowed Chair and Associate Professor*
The University of Akron School of Law

Adam Mossoff
*Professor of Law*
Antonin Scalia Law School
George Mason University

Lateef Mtima
*Professor of Law*
Howard University School of Law

Kristen Jakobsen Osenga
*Austin E. Owen Research Scholar & Professor of Law*
University of Richmond School of Law